IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MOSES KING, | Criminal No. 2:05-CR-218-DCN |
| Petitioner, | |
| | **ORDER AND OPINION** |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter is before the court on the petition of Moses King ("King") to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. The government filed a response in opposition, and on July 30, 2010, the court held an evidentiary hearing. For the reasons set forth below, the court denies the petition.

**I.   BACKGROUND**

On July 13, 2005, pursuant to a superseding indictment, a federal grand jury indicted King for: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1); (2) attempted possession with intent to distribute five kilograms or more of cocaine, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and 18 U.S.C. § 2 (Count 2); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count 3); and (4) being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1) (Count 4). Following King's arraignment, the government filed

1

a notice of intent to use King's prior convictions to enhance his sentence pursuant to 21 U.S.C. § 851. Thus, King's penalty for Count 3 was a fifteen-year mandatory minimum sentence.

On October 5, 2005, following a two-day jury trial, the jury found King guilty of Counts 1 and 2. On January 25, 2006, this court sentenced King to life in prison, to be followed by a ten-year term of supervised release. On February 10, 2006, King filed a notice of appeal, and on May 3, 2007, the Fourth Circuit affirmed his conviction. King then timely filed the instant pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

King raises three grounds for relief. First, he asserts that he was denied effective assistance of counsel under the Sixth Amendment because: (1) counsel failed to explain his sentence exposure and investigate his prior record, so that he could advise King of possible options; (2) counsel failed to follow his instructions to seek a plea agreement, or failed to convey to King the government's plea offer; (3) counsel had a conflict of interest that adversely affected his representation of King; (4) counsel failed to call Charles Clark as a witness at his trial; (5) counsel failed to renew a Federal Rule of Criminal Procedure 29 motion at the conclusion of his case; (6) counsel failed to argue against the aiding and abetting charge; (7) counsel failed to conduct a meaningful investigation in support of his case; and (8) counsel failed to advise him to challenge the prior state convictions used for the 21 U.S.C. § 851 enhancement.

Second, King asserts that he was denied effective assistance of appellate counsel under the Fifth and Sixth Amendments because appellate counsel failed to: (1) brief and

present meritorious issues on appeal and (2) notify him of the Fourth Circuit's decision affirming his conviction and file a petition for writ of certiorari at the Supreme Court of the United States. King's third and final ground for relief is that he is "actually innocent" of the crimes for which he was convicted. Mem. Supp. Pet. 12.

On September 25, 2008, the government filed a response in opposition to King's motion, refuting his claims and attaching an affidavit of King's trial and appellate counsel, James W. Smiley, IV, along with portions of the trial transcript. The court appointed attorney David McCann to represent King and conducted an evidentiary hearing on July 30, 2010. King, Assistant United States Attorney (AUSA) Carlton Bourne, and Mr. Smiley testified at the hearing.

## II.  PRO SE PETITIONS

King initially proceeded pro se in this case. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978). Courts classify pro se pleadings from prisoners according to their contents, without regard to their captions. United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

## III.  DISCUSSION

King proceeds under 28 U.S.C. § 2255(a), which provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

On a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, King bears the burden of proving the grounds for collateral attack by a preponderance of the evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The right to counsel guaranteed by the Sixth Amendment includes the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  In Strickland, the Supreme Court outlined counsel's responsibility to provide effective assistance and established a two-part test for determining whether counsel was ineffective.  Counsel is ineffective if:  (1) his efforts were objectively unreasonable as measured against prevailing professional norms and (2) counsel's errors were prejudicial.  Strickland, 466 U.S. at 688-94.  The court may consider either prong first and need not consider the other prong if the first is sufficiently established.  Id. at 697.  Prejudice exists if there is a reasonable probability that, but for counsel's deficient performance, the proceeding would have had a different result.  Id. at 694.  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  Id.

The Strickland Court explained that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The Court was particularly concerned with the temptation to evaluate the reasonableness of counsel's conduct using the benefit of hindsight, a problem that reviewing courts should make "every effort" to eliminate. See id. To correct the negative effects of after-the-fact second guessing, the Court instructed that there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenge conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Strickland, 466 U.S. at 690. On the prejudice prong, a petitioner must do more than show counsel's "errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, as discussed above, King has to present a reasonable probability of a different result absent counsel's alleged deficiencies.

### A.     King's Ineffective Assistance of Counsel Claims

King first claims that his trial counsel was ineffective for failing to explain his sentence exposure and investigate his prior record, so that his counsel could intelligently advise him of possible options. Although King testified that he never received a copy of the original or superseding indictments, he admitted that he was aware of his prior federal conviction and knew that he faced more time in prison as a result of that conviction.

At the July 30, 2010 hearing, King testified that, during his first arraignment on the original indictment, he represented to the court that he had reviewed the indictment with his attorney. After listening to a tape recording of his July 28, 2005 arraignment on the superseding indictment, which included a reading of the possible penalties by AUSA Bourne, King admitted that he knew he was facing a possible life sentence at that time. Upon examination by the undersigned, he also admitted that: (1) AUSA Bourne stated that three prior convictions would result in a mandatory life sentence, (2) he knew he had at least three prior convictions, and (3) he knew the meaning of the phrase "mandatory life." Moreover, King testified that after the superseding indictment arraignment, he never talked to Mr. Smiley about the fact that he was facing a maximum sentence of life in prison if he were convicted of either drug offense (Counts 1 or 2); however, he knew from his own experiences that his prior record would negatively impact his sentence.

Mr. Smiley testified that he discussed the charges and possible penalties with King shortly after he was arrested on the federal charges and before he ever came into court. Mr. Smiley testified that he spoke with King often at the Charleston County Detention Center (CCDC) because Mr. Smiley's office was located across the street. He further testified that King had been given a copy of the indictment before going to court and they talked about it when King was being held at CCDC. According to Mr. Smiley, King knew he was facing a possible life sentence as a result of the conspiracy count. Mr. Smiley stated that he discussed the charges with King and King knew exactly what he was facing. While Mr. Smiley and King thought King had a good defense to the conspiracy count, they were more concerned about the gun charge at the time, i.e., the

mandatory minimum sentence of fifteen years. Mr. Smiley testified that he never told King how to respond during his two federal arraignments and that King answered the magistrate judge's arraignment questions without being prompted by Mr. Smiley.

Based on the testimony above, the court finds it unnecessary to reach Strickland's two-part test with regard to King's first ineffective assistance claim. King's claim is wholly without merit. He admitted he was aware of the possible penalties he faced as a result of his prior convictions, thus, his own testimony clearly contradicts the claim he attempts to assert, as does Mr. Smiley's testimony.

King's second claim is that counsel failed to follow his instructions to seek a plea agreement, or failed to convey the government's plea offer to him. King testified that he told Mr. Smiley he would accept a plea agreement if one were offered by the government, but Mr. Smiley never informed him of any such offers.

Mr. Smiley testified that prior to the trial, AUSA Bourne offered to drop Count 1, the conspiracy count, if King pled guilty to Count 3, the felon in possession of a firearm count. According to Mr. Smiley, he asked King whether he was interested in pursuing a plea offer on approximately six to twelve occasions prior to the trial, and each time King stated that he did not want to plead guilty to the gun charge. Mr. Smiley testified that AUSA Bourne made the same offer on the morning of the first day of trial, adding that the government's case recently became stronger as a result of Eduardo Bowman's ("Bowman's") cooperation, but that King would not plead guilty and wanted to go forward with the trial.

AUSA Bourne testified that he discussed a possible plea with Mr. Smiley on two occasions. One occasion occurred prior to King's trial, at a bar meeting or motion hearing, and AUSA Bourne asked if King would plead guilty to Count 3. Mr. Smiley said he would check with his client. He later informed AUSA Bourne that King rejected the offer. The second occasion occurred on the first day of trial before opening arguments. AUSA Bourne asked again if King would plead guilty to the gun count. Mr. Smiley turned, talked to his client, and then told AUSA Bourne "no." AUSA Bourne testified that he could not hear what Mr. Smiley said to King, nor did he know with certainty that Mr. Smiley had relayed the first offer; however, AUSA Bourne would find it hard to believe that the offers were not relayed, having dealt with Mr. Smiley on several other cases. When asked by King's appointed attorney, Mr. McCann, if King would have gladly taken such an offer, AUSA Bourne answered "no." AUSA Bourne stated that King was still likely facing a minimum mandatory sentence of fifteen years if he were an armed career criminal, and that lengthy sentence, coupled with an acquittal secured by Mr. Smiley for King in a previous state drug case, may have weighed against King's acceptance of a plea offer. Obviously, AUSA Bourne could only speculate as to King's reasoning.

Looking first to the second prong of Strickland—whether counsel's alleged error was prejudicial—the court finds that King's second claim must fail. Prejudice exists if there is a reasonable probability that, but for counsel's deficient performance, the proceeding would have had a different result. Strickland, 466 U.S. at 694. The testimony from AUSA Bourne and Mr. Smiley reveals that the government tried to establish plea

negotiations with King. Even assuming that Mr. Smiley did not relay the government's invitation to discuss a plea (which is hard to believe since almost all criminal cases are disposed of by guilty pleas and Mr. Smiley is a well-experienced criminal lawyer), King is unable to establish with a reasonable probability that he would have accepted the plea agreement which would have included a fifteen-year mandatory sentence. AUSA Bourne testified that he did not provide a written plea agreement to Mr. Smiley. In fact, AUSA Bourne had not requested permission from the United States Attorney's Office in Columbia, South Carolina, to make a formal offer. AUSA Bourne merely inquired whether King would consider pleading guilty to Count 3. It is impossible to determine with any degree of certainty whether King would have accepted the government's plea agreement because no actual plea agreement ever existed. Moreover, it is uncertain whether King would have accepted a plea agreement resulting in a sentence of fifteen years or longer. In hindsight, it is simply too easy for King to say that he would have accepted any plea offer made by the government. He is serving a life sentence, so why would he say anything else?

     King's third and fourth ineffective assistance claims are closely related. His third claim is that Mr. Smiley had a conflict of interest which adversely affected his representation of King. Specifically, King claims that Mr. Smiley's representation of Leonard Clark, the brother of Charles Clark, in an unrelated state drug case created a conflict. His fourth claim is that Mr. Smiley failed to call Charles Clark as a witness at his trial.

In Cuyler v. Sullivan, 446 U.S. 335 (1980), the United States Supreme Court "held that 'the *possibility* of a conflict is insufficient to impugn a criminal conviction.'" Stephens v. Branker, 570 F.3d 198, 208 (4th Cir. 2009) (quoting Cuyler, 446 U.S. at 350) (emphasis added). "To establish a violation of his Sixth Amendment right, 'a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" Id. at 209 (quoting Cuyler, 446 U.S. at 348).

In his petition, King states that Leonard Clark is the brother of Charles Clark, who was "a major player" in the Bowman conspiracy—the same conspiracy in which King was convicted of being a member. Mem. Supp. Pet. 5. According to King, Charles Clark pled guilty and cooperated with the Drug Enforcement Administration (DEA), and he also paid Leonard Clark's legal fees when Mr. Smiley represented Leonard in state court on an unrelated drug charge. King asserts that Mr. Smiley should have informed him and the court of his representation of Leonard Clark. King asserts that Smiley should have called Charles Clark to testify that Bowman and Joe Washington ("Washington") knew each other and conspired together in the drug business, facts that Bowman and Washington denied when they testified at trial. King attached a partial DEA-6 Report of Investigation to his petition, which documented a recorded phone call from Charles Clark (at CCDC) to his sister, Tawana. Pet. Ex. C. During the call, Tawana states that Mr. Smiley is representing Leonard Clark and that "Anthony," presumably Anthony Clark, gave her money to pay Mr. Smiley. Id. King provided limited testimony regarding this claim during the evidentiary hearing; he stated that Mr. Smiley's representation of

10

Leonard Clark created a conflict of interest because Mr. Smiley did not act in King's best interest.

Mr. Smiley testified that he never met Charles or Anthony Clark, and he never collected any money from either individual because his paralegal collects his fees.  Mr. Smiley's only record of the fee payment in Leonard Clark's case was a receipt with Leonard Clark's name on it.

King has failed to submit any evidence showing an actual conflict of interest created by Mr. Smiley's representation of Leonard Clark.  He represented Leonard Clark in an unrelated state drug case involving a marijuana charge, and there is no evidence that Mr. Smiley had any contact with Charles Clark or that Charles Clark paid Leonard Clark's legal fees.  The evidence provided by King in the form of a DEA investigative report indicates that Tawana Clark, not Charles Clark, said she paid Leonard Clark's attorney's fees after receiving money from "Anthony" (presumably Anthony Clark).  As the Supreme Court held in Cuyler, "the possibility of a conflict of interest is insufficient to impugn a criminal conviction." 446 U.S. at 350.  Accordingly, King's conflict of interest claim fails.

King's fourth claim stems from the government's reliance upon the testimony of Bowman and Washington to establish his guilt.  In both his petition and his testimony during the evidentiary hearing, King asserts that Mr. Smiley should have called Charles Clark as a witness to make it clear to the jury that Bowman and Washington knew each other and conspired with each other, despite their testimony to the contrary.  King claims that Mr. Smiley's failure to call Charles Clark as a witness constituted ineffective

assistance of counsel.

Mr. Smiley testified that during his cross-examination of both DEA Task Force Officer (TFO) William Driggers and Bowman during the trial, he elicited testimony that Bowman and Washington knew each other and that King was not part of Bowman's drug organization. Mr. Smiley testified that it was part of his trial strategy to make these points through cross-examination of a law enforcement officer and the head of the conspiracy rather than call Charles Clark as a witness. Mr. Smiley was concerned that Charles Clark had his own interests to protect,[1] that he might discuss King's less-than-favorable reputation in the community, and that in a follow-up DEA interview, Charles Clark appeared to be less certain as to whether Washington was involved with Bowman's transportation of drugs from Georgia to South Carolina. During the cross-examination of TFO Driggers, Mr. Smiley was able to show that Charles Clark identified Washington in a photo lineup. Charles Clark also told TFO Driggers that Washington followed Bowman back from Georgia. During the cross-examination of Bowman, in reference to a letter sent by Bowman to King, Mr. Smiley asked if King had any involvement in Bowman's drug distribution organization, and Bowman answered "no." Mr. Smiley stated that he did not want to call Charles Clark as a witness for fear that he might attempt to explain away his relationship with Bowman.

---

[1] Court records reveal that Anthony and Charles Clark were indicted in case number 2:05-cr-00136-PMD for conspiracy to possess with intent to distribute cocaine and crack, possession with intent to distribute cocaine and crack, and possession of a firearm in furtherance of a drug trafficking crime. Charles Clark pleaded guilty on August 8, 2005, but had not been sentenced at the time of King's trial. Mr. Smiley had every reason to suspect that Charles Clark would be predisposed to shade his testimony in favor of the government.

During the evidentiary hearing, King admitted the following: (1) Mr. Smiley's cross-examination of TFO Driggers showed that Washington knew Bowman and followed him back from Georgia when Bowman brought drugs or money back to Charleston; (2) Mr. Smiley was able to show that Bowman and Washington were lying when they testified that they did not know each other; (3) during his follow-up interview, Charles Clark was less than 100 percent certain as to whether Washington followed Bowman back from Georgia, in contrast to his earlier interview, when he stated he was certain that Washington followed Bowman back from Georgia; and (4) at trial, TFO Driggers testified that he saw Washington's car parked in front of Bowman's house on one occasion, indicating a connection between Washington and Bowman.

Mr. Smiley's decision not to call Charles Clark as a witness was not objectively unreasonable under the first prong of Strickland. Taking into consideration the results achieved by Mr. Smiley through his cross-examination of TFO Driggers and Bowman, as well as King's acknowledgment of these results, King's desire to make the relationship between Washington and Bowman more evident by having Charles Clark testify does not render Mr. Smiley's representation ineffective. Mr. Smiley considered the possible ill effects of Clark's testimony and elected not to call him as a witness. The court finds that Mr. Smiley's decision demonstrated "sound trial strategy," not ineffectiveness of counsel. Michel, 350 U.S. at 101.

King's fifth claim is that Mr. Smiley failed to renew his Federal Rule of Criminal Procedure 29 motion at the conclusion of his case. At the evidentiary hearing, King withdrew this claim after acknowledging that the trial transcript proves that Mr. Smiley

13

did, in fact, make the Rule 29 motion at the appropriate times during the trial.

Sixth, King argues that Mr. Smiley was ineffective because he failed to argue against the aiding and abetting charge to the jury. Mr. Smiley testified that he was unable to argue against the charge because he had no case law supporting that position. Likewise, King does not offer any legal support for this argument; therefore, Mr. Smiley's failure to argue against the aiding and abetting charge was not objectively unreasonable under <u>Strickland</u>. The court also notes that ample evidence supported an aiding and abetting charge. The evidence showed that Bowman went to a hotel on February 4, 2005, to conduct a drug transaction. King's testimony, at both the trial and the evidentiary hearing, included statements that he went to the hotel with Bowman to watch Bowman's back and receive drugs in return for his services. Evidence introduced at trial also showed that there were numerous phone calls between Bowman and King on the same day.

King's seventh claim is that Mr. Smiley failed to conduct a meaningful investigation in support of his case. He asserts that a meaningful investigation would have uncovered "favorable evidence/witnesses to defend [him] at trial"; however, he failed to specifically identify any items of evidence or names of witnesses, other than offering the general category of fellow longshoremen as character witnesses, that would have been favorable to his defense. Mem. Supp. Pet. 9. King speculates that Mr. Smiley failed to investigate out of concern for Leonard Clark, his client in an unrelated state drug case.

Mr. Smiley testified that neither he nor King identified any issues warranting the participation of a private investigator.  Mr. Smiley stated that he was properly prepared for the trial, and he was successful in his cross-examinations.  Bowman, the alleged head of the drug distribution conspiracy, testified that King had no involvement in the conspiracy, and TFO Driggers testified that prior to the drug transaction at the hotel on February 4, 2005, King had not been identified as a target in DEA's investigation.  Mr. Smiley further testified that he was leery of calling character witnesses from the community and the waterfront because of King's extensive criminal history and questionable reputation in the community.  Once again, Mr. Smiley made a reasoned decision not to call character witnesses as part of his trial strategy.

The court finds no merit in King's claim that Mr. Smiley was ineffective as a result of a failure to conduct an independent investigation of his case.  King is unable to point to any evidence or witnesses that would have affected the outcome of his case, and once again, the court does not fault Mr. Smiley's trial strategy as it was not objectively unreasonable.

King's eighth and final ineffective assistance claim at the trial court level is that Mr. Smiley failed to advise him to challenge the prior state convictions used as a basis for the 21 U.S.C. § 851 sentencing enhancement.  King claims that Mr. Smiley "failed to explain to [him] the Supreme Court's ruling in [Johnson v. United States, 544 U.S. 295 (2005)] that would have caused [him] to initiate State PCR remedies."  Mem. Supp. Pet. 11.  King testified that he first learned about the § 851 enhancement at his sentencing.

In Johnson, the Supreme Court held that "a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." 544 U.S. at 303. In other words, a defendant may pursue relief under 28 U.S.C. § 2255 only after his prior conviction is vacated.

Mr. Smiley testified that he explained the § 851 enhancement to King, and thus King was aware that he was facing a life sentence if he went to trial. Mr. Smiley testified that a life sentence was the only sentence King could receive based on his criminal history if he went to trial and was convicted.

While King claims that he could have initiated "State PCR remedies," he has not alleged any legal basis for challenging his prior state court convictions. Unless King had a valid basis for having his prior convictions vacated, Mr. Smiley would have no reason to advise him to challenge those convictions. Consequently, King's eighth claim fails.

In addition to the claims above, King asserts two claims of ineffective assistance of counsel against Mr. Smiley in his capacity as appellate counsel. First, King claims that Mr. Smiley failed to brief and present meritorious issues on appeal. Second, he claims that Mr. Smiley failed to notify him of the Fourth Circuit's decision affirming his conviction and sentence, and to file a petition for a writ of certiorari.

King's first claim falls flat because it is simply a bald assertion with no factual or legal support. He testified that he wanted Mr. Smiley to argue that he was innocent and that the evidence in his case was insufficient to convict him. However, after reading Mr. Smiley's appellate brief, King did not bring to Mr. Smiley's attention any additional issues that he wanted Mr. Smiley to address, nor did he offer any new evidence in support

16

of his alleged innocence.

King's second claim also fails due to its lack of factual and legal support. In the first half of this claim, he asserts that Mr. Smiley failed to inform him of the Fourth Circuit's decision affirming his conviction and sentence. Mr. Smiley, on the other hand, testified that he informed King of the decision within ten days of its issuance. The crux of King's second ineffective appellate counsel claim, however, is not Mr. Smiley's alleged failure to inform him of the Fourth Circuit's decision, but the second half of the asserted claim—Mr. Smiley's alleged failure to file a petition for writ of certiorari. King's claim is completely undermined by the fact that he does not identify any basis for a petition for writ of certiorari and his candid admission that he does not know what a writ of certiorari is, but a jailhouse lawyer suggested that he should assert the claim in his § 2255 petition.

### B.     King's Actual Innocence Claim

King's third and final ground for relief is that he is "actually innocent" of the crimes for which he was convicted. Mem. Supp. Pet. 12. As discussed above, he offers no new evidence to support this argument, so the claim must be dismissed.

### IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that King's petition to vacate, set aside, or correct his sentence is **DENIED**. A certificate of appealability is also **DENIED**.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**August 24, 2011**
**Charleston, South Carolina**